Hon. ROUSSEAU A. BURCH,
Hon. HENRY F. MASON,
Hon. JOHN MARSHALL,
Hon. JOHN S. DAWSON, } Justices.
Hon. W. W. HARVEY,
Hon. RICHARD J. HOPKINS,

No. 26,474.

C. W. Talbot, by his Next Friend, Mrs. C. W. Talbot, *Appellee*, v. H. F. G. Wulf, *Appellant.*

No. 26,904.

Maude B. Ash, Executrix of the Estate of C. W. Talbot, *Appellant*, v. H. F. G. Wulf, *Appellee.*

##### SYLLABUS BY THE COURT.

1. Insane Persons—*Persons Incompetent but Not Insane—Right to Maintain Action by Next Friend.* An action may be maintained by an incompetent person by a next friend, when the incompetent is not insane but is incapable of managing his affairs, and incompetency has not been adjudged and no guardian has been appointed.

2. Exchange of Property—*Rescission for False Representations—Pleading.* A petition examined, and held to state a cause of action for rescission of a trade of shares of stock for other shares of stock, induced by false representations, and not a cause of action for replevin of stolen property.

3. New Trial—*Generally.* An appeal from an order granting a new trial considered, and held to be without merit.

Appeal from Allen district court; Robert E. Cullison, judge. Opinion filed December 11, 1926. Affirmed.

Exchange of Property, 23 C. J. pp. 212 n. 30, 240 n. 79. False Pretenses, 25 C. J. p. 657 n. 24. Insane Persons, 32 C. J. pp. 764 n. 43, 772 n. 27, 775 n. 30; 64 L. R. A. 513; 2 L. R. A. n. s. 961; 14 R. C. L. 611.

*L. T. Cannon,* of Humboldt, *Travis Morse* and *F. J. Oyler,* both of Iola, for appellant and appellee H. F. G. Wulf.

*Carr W. Taylor,* of Hutchinson, and *William Keith,* of Wichita, for appellee C. W. Talbot and appellant Maude B. Ash.

The opinion of the court was delivered by

Burch, J.: The action was one to recover shares of stock, or in the alternative, the value of shares of stock, which defendant purchased from a person who procured them from plaintiff by fraud. Defendant's demurrer to the petition was overruled, and he appealed. The jury returned a verdict for plaintiff, the court granted a new trial and, the plaintiff having died, his executrix appealed. The two appeals were consolidated in this court.

The action was commenced by C. W. Talbot, by his next friend, Mrs. C. W. Talbot. The petition alleged that C. W. Talbot was a person of unsound mind, but had not been adjudged incompetent, and no guardian for him had been appointed. Defendant demurred on the ground plaintiff had no capacity to sue.

The statute dealing with the general subject of insane, incompetent and dependent persons provides for appointment of a guardian for one who is insane, a lunatic, an imbecile, or feeble-minded, and who for any of these reasons is incompetent to manage his affairs. The same statute provides that it shall be the duty of such guardian to prosecute and defend all actions instituted in behalf of or against his ward. (R. S. 39-209.) The code of civil procedure contains no provision with reference to commencement of an action by an insane or incompetent person, but does provide that, in an action against such a person, the court shall appoint a guardian *ad litem* for him, in case his legally appointed guardian fails to appear, or in case no guardian has been appointed. (R. S. 60-408.) There is no statute which in terms forbids commencement of an action by an incompetent by his next friend, when incompetency has not been adjudged and no guardian has been appointed. Under these circumstances, the court is of the opinion the common law permitting such a person to sue by his next friend has not been abrogated. The authorities are quite uniform that such an action may be maintained when the person in whose behalf the action is commenced is not insane, but is merely incapable of managing his affairs, has not been adjudged to be incompetent, and has no duly appointed guardian. (Case notes, 64 L. R. A. 513; 2 L. R. A., n. s., 961.)

Talbot v. Wulf.

Defendant contends the statutes relating to actions by infants forbid acceptance of the view which has been stated. The statute relating to guardianship of infants, providing that guardians of property of minors must prosecute and defend for their wards (R. S. 38-210), is one granting power and imposing duty. The corresponding section relating to guardians of incompetents (R. S. 39-209), likewise grants power and imposes duty, but does not impose a restriction on an incompetent who has no guardian. The section of the code of civil procedure which provides that the action of an infant must be commenced by his guardian or next friend (R. S. 60-406), imposes a limitation which was not extended to actions by incompetents.

R. S. 60-406 just referred to provides that when an action of an infant is commenced by a next friend, the court has power to dismiss if the action be not for the infant's benefit, and may substitute a next friend of the court's own choosing. A court is not obliged to tolerate an action instituted on behalf of an incompetent by a mere busybody, or which does not appear to be for the best interest of the incompetent; but a court is not obliged to dismiss an action for vindication of some important, legally protected interest of an incapable, because the action was not commenced in due form.

Defendant cites the following decisions of this court as opposed to the view which has been stated: *Gustafison v. Ericksdotter*, 37 Kan. 670, 16 Pac. 91; *State v. Jehlik*, 66 Kan. 301, 71 Pac. 572; *Linderholm v. Walker*, 102 Kan. 684, 171 Pac. 603.

In the Gustafison case the action appeared on the record as commenced in the usual way by plaintiff by her attorney. The answer disclosed that plaintiff was a nonresident of the state, was a person of unsound mind, had no guardian, and lacked capacity to employ an attorney. The court held the answer was not demurrable. The plaintiff had no capacity of her own, and was not represented by any one having authority to do so or who undertook to be responsible for costs. In the Jehlik case, the action was a statutory action. The plaintiff did not have capacity to meet statutory requirements indispensable to maintenance of the action, and this court approved the order of the district court dismissing the action. In the Linderholm case, one who had been adjudged insane, and who was under guardianship, undertook to institute an action in his own behalf. The court applied the general rule that, except under certain special

circumstances, the guardian should sue for his ward, and dismissed the action.

Defendant demurred to the petition on the ground it did not state facts sufficient to constitute a cause of action. The petition was framed with a double aspect—replevin for stolen property, and rescission of a trade induced by fraud.

Scattered here and there throughout the petition were allegations that one Mills and a confederate feloniously took, stole and carried away 19½ shares of Monarch Cement Company stock, the property of Talbot. In the paragraph preceding the prayer, it was charged that defendant knew, or ought to have known, that the shares were stolen property, and that defendant acquired no title to the shares or ownership of them. The petition, however, stated in detail the facts relating to the transfer of the shares from Talbot to Mills. The petition alleged that Mills offered to exchange and trade to Talbot 20 shares or units of the Great American Royalties Company for Talbot's 19½ shares of Monarch stock; that by means of false representations and pretenses made to him and on which he relied, Talbot was induced to make the proposed exchange of stock, and did deliver his shares of Monarch stock to Mills, received from Mills a written agreement to deliver the Royalties Company shares, and later received from Mills the Royalties Company shares. In another part of the petition it was stated that, relying on false representations and pretenses made by Mills, and being induced thereby, Talbot did trade to Mills the 19½ shares of Monarch stock, and Mills received the same.

Title to Talbot's stock passed to Mills, or did not pass to Mills. After the trade the stock belonged to one person or the other, and the pleader is not permitted to equivocate about it. If title passed, there was no larceny. The petition did not allege that there was anything wrong with Talbot's mind when he traded his stock for the stock Mills offered him. On the face of the petition, Talbot's conduct was the conduct of a competent person, and the ground of recovery is fraud. The petition pleaded a definite mental attitude on Talbot's part—reliance on Mills' representations as true—and then pleaded all the elements of a fully executed trade—offer, acceptance, and delivery. This being true, the pleaded details of what occurred control interpretation of the petition. Talbot cannot convert a transaction involving a consummated trade of one kind

Talbot v. Wulf.

of security for another kind into larceny by calling it larceny, and the petition failed to state a cause of action on the theory a larceny was committed.

In telling the story of the trade, the petition suppressed a fact disclosed by the answer and not disputed, which contradicted the larceny theory. Talbot signed an instrument of sale, assignment and transfer of his shares of stock, and power of attorney to effectuate the transfer, indorsed on the back of the certificate of stock, and he is not permitted to deny the legal effect of the instrument to pass title to one to whom he delivered it to effectuate a trade.

The petition appears to have been drawn under a misconception of the effect of R. S. 21-553, providing that if, in a criminal action, the proof to sustain a charge of obtaining property by false pretense should establish larceny, the defendant shall not be acquitted, but shall be convicted and punished as if false pretense had been proved. The section was designed to prevent a failure of justice on account of a variance between pleading and proof dependent on the distinction between the crime of larceny and the crime of obtaining by false pretense, but the distinction was not removed. (*State v. Tower*, post, p. 165.) If the owner of a horse be induced by false pretense to permit another to have possession of the horse, and the other converts it, the owner not intending to part with title, and the other intending to deprive the owner of his property, the crime is larceny, and the owner may resort to the civil remedy of replevin. If the owner of a horse be induced by false pretense to trade horses with another, title passes, the offense of the other is obtaining property by false pretense, replevin does not lie, and the owner's civil remedies are rescission, or action for damages. (25 C. J. 657.)

The petition stated a cause of action for rescission. It was not necessary that rescission be declared in set phrase, and it was alleged that Talbot received nothing of value for his Monarch stock. A mere next friend has no authority to rescind an exchange of property made by an incompetent. A duly appointed guardian alone has that power, but the record does not make it manifest that the action may not be maintained.

Trial errors complained of by defendant may not be considered, because he applied for and procured a new trial. Plaintiff's appeal from the order granting a new trial has been considered, and is without merit.

The judgment of the district court in each case is affirmed.